# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
## WESTERN DIVISION



In re:

Gustave Stanley Kozarzewski, Jr. and
Dana Susan Kozarzewski

             Debtors

_____

Consumers Credit Union

             Plaintiff,

        v.

Gustave Stanley Kozarzewski, Jr. and
Dana Susan Kozarzewski,

             Defendants.

Chapter 7

Case No. 15-82570

Hon. Judge Lynch

Adv. No.

## COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBTS

The Plaintiff, Consumers Credit Union, herein the "Credit Union," by its attorneys, Kerry

S. Trunkett and Caroline O'Connell of Trunkett & Trunkett, P.C., presents its Complaint against

the Defendants, Gustave Stanley Kozarzewski, Jr. and Dana Susan Kozarzewski, herein "the

Defendants," pursuant to Federal Rule of Bankruptcy Procedure 7015 and pursuant to 11 U.S.C.

§523, §523(a)(6), and 523(a)(4) and states as follows:

## JURISDICTION

1.      This Court has jurisdiction of this matter pursuant to 28 U.S.C §1334 and Local

General Rule 2.33(a) of the United States District Court for the Northern District of Illinois

2.      This is a core proceeding brought pursuant to 28 U.S.C. §157(b)(2)(I) and (J) and

brought as an adversary proceeding under Federal Rule of Bankruptcy Procedure 7001.

## BACKGROUND ALLEGATIONS

3.      This is a claim for relief brought pursuant to 11 U.S.C. §523, §523(a)(6), and

§523(a)(4).

4.      On October 13, 2015, the Defendants jointly voluntarily filed for relief under

Chapter 7 of the United States Bankruptcy Code.

5.      The Defendants, at all times pertinent to allegations contained herein, were

members of the Credit Union, a not for profit, member owned institution.

6.      On December 22, 2008, Defendant Gustave Stanley Kozarzewski (herein "Mr.

Kozarzewski") became indebted to the Credit Union pursuant to a loan agreement for the

purchase of a 2006 Chevrolet Corvette, VIN #1G1YY26E765103642, (hereinafter the

"Corvette").  A true and correct copy of the loan agreement is attached as Exhibit A.

7.      Included in the agreement was a security agreement granting the Credit Union a

lien upon the Corvette.  The Credit Union perfected its security interest by placing a lien upon

the Corvette's certificate of title.  A true and correct copy of the Corvette's certificate of title is

attached as Exhibit B.

8.      Mr. Kozarzewski remains indebted pursuant to the loan agreement in the amount

of $74,720.01.

9.      After Mr. Kozarzewski failed to make monthly payments therefore defaulting on

the loan agreement, the Credit Union commenced efforts to repossess the Corvette. Upon the

investigation of the Corvette, the Credit Union researched the Corvette's title history.

10.     In December 2011, Mr. Kozarzewski forged a release of the Credit Union's lien

upon title to the Corvette and filed with the Illinois Secretary of State an application for title

showing title free and clear of the Credit Union's lien.  Attached as Exhibit C is a copy of this

forged lien release.  The Credit Union did not execute this lien release and did not consent to the release of its lien against the Corvette.

11.     At the time Mr. Kozarzewski forged and fabricated the Credit Union's release of lien, the Corvette's value was $37,850.00.  Attached as Exhibit D is a true and correct copy of the NADA report for the time period of December 2011.

12.     In October 2012, Mr. Kozarzewski transferred the Corvette to D & Ry's Inc. d/b/a Roger's Auto Sales, LLC.

13.     At all times pertinent hereto, Mr. Kozarzewski was employed with D & Ry's Inc.

14.     As an employee of D & Ry's Inc., Mr. Kozarzewski's responsibility included procuring used vehicles and selling used vehicles at auto auctions.

15.     After forging the release of the Credit Union's lien, Mr. Kozarzewski, through D & Ry's, Inc. sold the Corvette through Mecum Auto Auction.

16.     The Corvette is now located in Iowa with a new owner and a new lienholder indicated on the title.

17.     On December 20, 2008, Defendant Dana Susan Kozarzewski (herein "Mrs. Kozarzewski") became indebted to the Credit Union pursuant to a loan agreement for the purchase of a 2004 Ford Expedition, VIN #1FMFU16L14LA87168, (hereinafter the "Ford").  A true and correct copy of the loan agreement is attached as Exhibit E.

18.     Included in the agreement was a security agreement granting the Credit Union a lien upon the Ford.  The Credit Union perfected its security interest by placing a lien upon the Corvette's certificate of title.  A true and correct copy of the Corvette's certificate of title is attached as Exhibit F.

19.     Mrs. Kozarzewski remains indebted pursuant to the loan agreement in the amount of $8,391.48.

20.     After Mrs. Kozarzewski failed to make monthly payments, the Credit Union commenced efforts to repossess the Ford. Upon the investigation of the Ford, the Credit Union researched the Ford's title history.

21.     In December 2011, Mrs. Kozarzewski forged a release of the Credit Union's lien upon title to the Corvette and filed with the Illinois Secretary of State an application for title showing title free and clear of the Credit Union's lien.  Attached as Exhibit G is a copy of this forged lien release.  The Credit Union did not execute this lien release and did not consent to the release of its lien against the Ford.

22.     At the time Mrs. Kozarzewski forged and fabricated the Credit Union's release of lien, the Ford's value was $8,125.00.  Attached as Exhibit H is a true and correct copy of the NADA report for the time period of December 2011.

23.     In October 2012, Mrs. Kozarzewski transferred the Corvette to D & Ry's Inc. d/b/a Roger's Auto Sales, LLC.

24.     After forging the release of the Credit Union's line, Mrs. Kozarzewski, through D & Ry's, Inc. sold the Ford through Mecum Auto Auction.

## COUNT I

**Gustave Kozarzewski – 11 U.S.C. §523(a)(6)**
**The debt owed to the Credit Union is non-dischargeable because the debtor forged a
release of the Credit Union's lien and sold the Credit Union's property**

25.     The Credit Union repeats, re-alleges and incorporates each of the allegations contained in Paragraphs 1 through 24 of this Complaint as fully set forth and alleged herein.

26.     Mr. Kozarzewski  defaulted in the terms of the loan agreement by failing to remit payment to the Credit Union.

27.     The Credit Union was lawfully entitled to possession of the Corvette as the lienholder of the collateral.

28.     Mr. Kozarzewski intentionally forged a lien release on the Credit Union's letterhead with a false signature of a non-existent employee.  *See Exhibit C.*

29.     Mr. Kozarzewski had no right to the Corvette as he defaulted on the Credit Union's secured loan under the terms of the contract.

30.     Mr. Kozarzewski's actions caused significant financial harm to the Credit Union as it no longer holds a perfected security interest in the Corvette to serve as collateral for the loan.

31.     The value of the Corvette at the time Mr. Kozarzewski defaulted on the loan agreement and obtained the false lien release was $37,850.00. *See Exhibit D.*

WHEREFORE, Plaintiff, Consumers Credit Union respectfully requests this honorable court enter an order pursuant to 11 U.S.C. § 523 finding that $37,850.00 is due to the Credit Union be deemed non-dischargeable in bankruptcy.


**<u>COUNT II</u>**
**<u>Gustave Kozarzewski – 11 U.S.C. §523(a)(4)</u>**
**The debt owed to the Credit Union is non-dischargeable because the debtor sold the Credit Union's property with the intent to deprive the Credit Union of its property**
**(Plead in the Alternative to Count I)**


32.     The Credit Union repeats, re-alleges and incorporates each of the allegations contained in Paragraphs 1 through 31 of this Complaint as fully set forth and alleged herein.

33.     Mr. Kozarzewski was in possession of the Corvette pursuant to the Credit Union's lien on the Corvette in December 2011.

34.    Mr. Kozarzewski intentionally forged a lien release for the Corvette on the Credit

Union's letterhead with a false signature of a non-existent Credit Union employee.  *See Exhibit*

*C.*

35.    Mr. Kozarzewski, though his employer, sold the Corvette with a false title to

Mecum Auto Auction, which then re-sold the vehicle to a purchaser in Iowa.

36.    Mr. Kozarzewski intended to deprive the Credit Union of the Corvette

permanently and to not repay the debt owed to the Credit Union pursuant to the loan.

37.    Pursuant to the terms of the loan agreement, the Credit Union is entitled to

reasonable attorneys' fees and costs pursuant to enforcing its right to the embezzled property.

WHEREFORE, Plaintiff, Consumers Credit Union respectfully requests this honorable

court enter an order pursuant to 11 U.S.C. § 523 finding that $74,720.01 is due to the Credit

Union be deemed non-dischargeable in bankruptcy.

### COUNT III
### Dana Kozarzewski – 11 U.S.C. §523(a)(6)
**The debt owed to the Credit Union is non-dischargeable because the debtor forged a
release of the Credit Union's lien and sold the Credit Union's property**

38.    The Credit Union repeats, re-alleges and incorporates each of the allegations

contained in Paragraphs 1 through 37 of this Complaint as fully set forth and alleged herein.

39.    Mrs. Kozarzewski had defaulted in the terms of the loan agreement by failing to

remit payment to the Credit Union.

40.    The Credit Union was lawfully entitled to possession of the Ford as the owner and

lienholder.

41.    Mrs. Kozarzewski intentionally forged a lien release on the Credit Union's

letterhead with a false signature of a non-existent employee.  *See Exhibit G.*

42.     Mrs. Kozarzewski had no right to the Ford as she defaulted on the Credit Union's
secured loan under the terms of the contract.

43.     Mrs. Kozarzewski's actions caused significant financial harm to the Credit Union
as it no longer holds a perfected security interest in the Corvette to serve as collateral for Mrs.
Kozarzewski's loan.

WHEREFORE, Plaintiff, Consumers Credit Union respectfully requests this honorable
court enter an order pursuant to 11 U.S.C. § 523 finding that $8,125.00 is due to the Credit
Union be deemed non-dischargeable in bankruptcy.

### COUNT IV
### Dana Kozarzewski – 11 U.S.C. §523(a)(4)
**The debt owed to the Credit Union is non-dischargeable because the debtor sold the Credit
Union's property to another entity
(Pled in the alternative to Count III)**

44.     The Credit Union repeats, re-alleges and incorporates each of the allegations
contained in Paragraphs 1 through 31 of this Complaint as fully set forth and alleged herein.

45.     Mrs. Kozarzewski was in possession of the Ford pursuant to the Credit Union's
lien on the Ford in December 2011.

46.     Mrs. Kozarzewski intentionally forged a lien release for the Ford on the Credit
Union's letterhead with a false signature of a non-existent Credit Union employee.  *See Exhibit
G.*

47.     Mrs. Kozarzewski, though her husband's employer, sold the Ford with a false title
to Mecum Auto Auction, which then re-sold the vehicle to a purchaser in Iowa.

48.     Mrs. Kozarzewski intended to deprive the Credit Union of the Corvette
permanently and to not repay the debt owed to the Credit Union pursuant to the loan.

49.     Pursuant to the terms of the loan agreement, the Credit Union is entitled to

reasonable attorneys' fees and costs pursuant to enforcing its right to the embezzled property.

WHEREFORE, Plaintiff, Consumers Credit Union respectfully requests this honorable

court enter an order pursuant to 11 U.S.C. § 523 finding that $8,391.48 is due to the Credit

Union be deemed non-dischargeable in bankruptcy.


Respectfully submitted,

Consumers Credit Union


By: _/s/ Caroline M. O'Connell____
    Caroline O'Connell, One of Its Attorneys


**TRUNKETT & TRUNKETT, P.C**
20 N. Wacker Drive
Suite 1434
Chicago, Illinois 60606
312.324.3101
Kerry Trunkett: 6188221
Caroline O'Connell: 6316656

# EXHIBIT A

**CONSUMERS** CREDIT UNION
*Your life. Our commitment.*



**Open-End Voucher and Security Agreement**

## BORROWER INFORMATION

| | | |
|---|---|---|
| BORROWER 1 NAME **GUSTAVE S KOZARZEWSKI JR** | AMOUNT REQUESTED $ 70,396.82 | DATE **12/22/2008** |
| BORROWER 1 ADDRESS **10680 PAINTED DESERT CT** | PURPOSE: **TITLE SECURED** | |
| **HUNTLEY**     IL   60142-000 | | |
| BORROWER 2 NAME | ACCOUNT NUMBER | DEPOSIT CHECK IN ACCOUNT NUMBER/OTHER: |
| BORROWER 2 ADDRESS | SOCIAL SECURITY NUMBER | CHECK PAYABLE TO: |
| | | REPAYMENT METHOD: |

| BORROWER 2 EMPLOYER NAME | WORK TELEPHONE NUMBER | DATE HIRED | GROSS MONTHLY SALARY $ |
|---|---|---|---|
| NOTICE: YOU DON'T HAVE TO INCLUDE INCOME FROM CHILD SUPPORT, SEPARATE MAINTENANCE, OR ALIMONY UNLESS YOU WANT THE CREDIT UNION TO CONSIDER IT. | SOURCE OF OTHER INCOME | | OTHER MONTHLY INCOME $ |

## REPAYMENT TERMS

**FOR CREDIT UNION USE ONLY**

| DAILY PERIODIC RATE | ANNUAL PERCENTAGE RATE INTEREST RATE IS: | OTHER FEES (Amount and Description) | NEW BALANCE THIS SUBACCOUNT |
|---|---|---|---|
| .03695890% | 13.4900% | $ | $ |

| AMOUNT ADVANCED | PAYMENT AMOUNT | DATE DUE | PAYMENT FREQUENCY | LINE OF CREDIT LIMIT | REMAINING LIMIT |
|---|---|---|---|---|---|
| $ 70,396.82 | $ 1,305.96 | 02-05-2009 | M | $ | $ |

## SECURITY OFFERED  CONSUMERS' CLAIMS AND DEFENSES -- IF CHECKED, SEE PARAGRAPH 6 FOR NOTICE

THE ADVANCE IS SECURED BY YOUR SHARES, ALL PROPERTY SECURING OTHER PLAN ADVANCES AND LOANS RECEIVED IN THE PAST OR IN THE FUTURE, AND THE FOLLOWING

| PROPERTY/MODEL | | YEAR | I.D. NUMBER | VALUE | KEY NUMBER |
|---|---|---|---|---|---|
| **CHEVROLET** | **CORVETTE** | 2006 | 1G1YY26E765103642 | $ | |
| **CHEVROLET** | **CORVETTE** | 2004 | | $ | |
| | | | | $ | |
| | | | | $ | |

| PLEDGE OF SHARES AND/OR DEPOSITS  $ | ACCOUNT NUMBER | PLEDGE OF SHARES AND/OR DEPOSITS   $ | ACCOUNT NUMBER |
|---|---|---|---|

## SIGNATURES

By signing below, by endorsing the proceeds check or by using the amount advanced and deposited into your share/share draft account you agree:
1. To make and be bound by the terms of this Security Agreement including the cross collateral clause;
2. The Credit Union will rely on the information above and your credit report to make a credit decision;
3. To make payments as disclosed above in accordance with the terms of your Plan.

| X _____ (SEAL) | X _____ (SEAL) |
|---|---|
| BORROWER 1 SIGNATURE          DATE | BORROWER 2 SIGNATURE          DATE |
| X _____ (SEAL) | X _____ (SEAL) |
| SIGNATURE ☐ OWNER OF COLLATERAL (Other than a Borrower)     DATE | SIGNATURE ☐ OWNER OF COLLATERAL (Other than a Borrower)     DATE |

© CUNA MUTUAL GROUP, 1980, 82, 84, 86, 89, 98, 99, 2000, ALL RIGHTS RESERVED

VXX036 (LASER)

**Consumers Cooperative Credit Union**   GUSTAVE S SCZARZEWSKI JR   Date 12/22/2008

## SECURITY AGREEMENT



In this agreement all references to "credit union," "we," "our," or "us" mean the credit union whose name appears on this agreement and anyone to whom the credit union assigns or transfers this agreement. All references to "you," "your," and "borrower" mean each person who signs this agreement. All references to "the advance" mean the amount in the box labeled "Amount Advanced" on page one. All references to "the Plan" mean the Credit Agreement under which the advance was obtained. Some of the provisions of this agreement apply only if the Credit Union is state chartered. A credit union has a state charter if its name does not include the words "Federal Credit Union" or "FCU". This is a multi-state document which may be used to lend to borrowers in all states except Louisiana and Wisconsin.

**1.   THE SECURITY FOR THE PLAN** -- By signing this security agreement in the signature area or under the statement referring to this agreement which is on the back of the check you receive for the advance, you give us what is known as a security interest in the property described in the "Security Offered" section on page one. The security interest you give includes all accessions. Accessions are things which are attached to or installed in the property now or in the future. The security interest also includes any replacements for the property which you buy within 10 days of the advance or any extensions, renewals or refinancings of the advance. It also includes any money you receive from selling the property or from insurance you have on the property. If the value of the property declines, you promise to give us more property as security if asked to do so.

**2.   WHAT THE SECURITY INTEREST COVERS** -- The security interest secures the advance and any extensions, renewals or refinancings of the advance. It also secures any other advances you have now or acquire in the future under the Plan and any other amounts or loans, including any credit card loan, you owe us for any reason now or in the future, except any loan secured by your principal residence. If the property is household goods as defined by the Federal Trade Commission Credit Practices Rule, the property will secure only the advance and not other amounts you owe.

**3.   OWNERSHIP OF THE PROPERTY** -- You promise that you own the property you give as security or if the Advance is to buy the property, you promise you will use the Advance for that purpose. You promise that no one else has any interest in or claim against the property that you have not already told us about. You promise not to sell or lease the property or to use it as security for a loan with another creditor until the advance is repaid. You promise you will allow no other security interest or lien to attach to the property either by your actions or by operation of law.

**4.   PROTECTING THE SECURITY INTEREST** -- If your state issues a title for the property, you promise to have our security interest shown on the title. We may have to file what is called a financing statement to protect our security interest from the claims of others. If asked to do so, you promise to sign a financing statement. You also promise to do whatever else we think is necessary to protect our security interest in the property. You promise to pay all costs, including but not limited to any attorney fees, we incur in protecting our security interest and rights in the property, to the extent permitted by applicable law.

**5.   USE OF PROPERTY** -- Until the advance has been paid off, you promise you will: (1) Use the property carefully and keep it in good repair, (2) Obtain our written permission before making major changes to the property or changing the address where the property is kept. (3) Inform us in writing before changing your address. (4) Allow us to inspect the property. (5) Promptly notify us if the property is damaged, stolen or abused. (6) Not use the property for any unlawful purpose.

**6.   CONSUMERS' CLAIMS AND DEFENSES NOTICE** -- *The following paragraph applies only when the box on page one is checked.*

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

**7.   PROPERTY INSURANCE, TAXES AND FEES** -- You must maintain property insurance on all property that you give as security under the Plan. You may purchase the property insurance from anyone you choose who is acceptable to the Credit Union. The amount and coverage of the property insurance must be acceptable to us. You may provide the property insurance through a policy you already have, or through a policy you get and pay for. You promise to make the insurance policy payable to us and to deliver the policy or proof of coverage to us if asked to do so.

If you cancel your insurance and get a refund, we have a right to the refund. If the property is lost or damaged, we can use the insurance settlement to repair the property or apply it towards what you owe. You authorize us to endorse any draft or check which may be payable to you in order for us to collect any refund or benefits due under your insurance policy. You also promise to pay all taxes and fees (like registration fees) due on the property.

If you do not pay the taxes or fees on the property when due or keep it insured, we may pay these obligations, but we are not required to do so. Any money we spend for taxes, fees or insurance will be added to the unpaid balance of the advance and you will pay interest on those amounts at the same rate you agreed to pay on the advance. We may receive payments in connection with the insurance from a company which provides the insurance. We may monitor our loans for the purpose of determining whether you and other borrowers have complied with the insurance requirements of our loan agreements or may engage others to do so. The insurance charge added to the advance may include (1) the insurance company's payments to us and (2) the cost of determining compliance with the insurance requirements. If we add amounts for taxes, fees or insurance to the unpaid balance of the advance, we may increase your payments to pay the amount added within the term of the insurance or approximate term of the advance.

**8.   NOTICE** -- If you do not purchase the required property insurance, the insurance we may purchase and charge you for will cover only our interest in the property. **The insurance will not be liability insurance and will not satisfy any state financial responsibility or no fault laws.**

**9.   DEFAULT** -- You will be in default if you break any promise you make under this agreement. You will also be in default if you are in default under the Plan. If you are pledging property, but have not signed the Plan, you will be in default if anyone is in default who has signed the Plan.

**10.  WHAT HAPPENS IF YOU ARE IN DEFAULT** -- *The following paragraph applies to borrowers in Colorado, District of Columbia, Iowa, Kansas, Maine, Massachusetts, Missouri, Nebraska, West Virginia and state chartered credit unions lending to South Carolina borrowers.* When you are in default and after expiration of any right you have under applicable state law to cure your default, we can demand immediate payment of the entire unpaid balance under the Plan without giving you advance notice.

*The following paragraph applies to borrowers in all other states and federally chartered credit unions lending to South Carolina borrowers.* When you are in default, we can require immediate payment (acceleration) of the entire unpaid balance under the Plan. You waive any right you have to demand for payment, notice of intent to accelerate and notice of acceleration.

(Continued on next page)

© CUNA MUTUAL GROUP, 1980, 82, 84, 86, 89, 96, 99, 2000, ALL RIGHTS RESERVED

VXX036 (LASER)

To:13125586420   APR-03-2014 11:28AM From:LENDINGFAX

| Consumers Cooperative Credit Union | GUSTAVE S KOZARZEWSKI JR | Date 12/22/2008 |

### The following paragraphs apply to all borrowers.

You agree the Credit Union has the right to take possession of the property given as security under the Plan, without judicial process, if this can be done without breach of the peace. If we ask, you promise to deliver the property at a time and place we choose. We will not be responsible for any other property not covered by this agreement that you leave inside the property or that is attached to the property. We will try to return that property to you or make it available to you to claim.

After we have possession of the property, we can sell it and apply the money to any amounts you owe us. We will give you notice of any public sale or the date after which a private sale will be held. Our expenses for taking possession of and selling the property will be deducted from the money received from the sale. Those costs may include the cost of storing the property, preparing it for sale and attorney's fees to the extent permitted under state law or awarded under the Bankruptcy Code. The rest of the sale money will be applied to what you owe under the Plan.

If you have agreed to pay the Advance, you will also have to pay any amount that remains unpaid after the sale money has been applied to the unpaid balance of the Advance and to what you owe under this agreement. You agree to pay interest on that amount at the same rate as the Advance, or, if applicable, at the default rate disclosed on the Addendum, until that amount has been paid.

### 11. DELAY IN ENFORCING RIGHTS AND CHANGES IN THE PLAN

We can delay enforcing any of our rights under this agreement any number of times without losing the ability to exercise our rights later. We can enforce this agreement against your heirs or legal representatives. If we change the terms of the Plan, you agree that this agreement will continue to protect us.

### 12. CONTINUED EFFECTIVENESS -- If any part of this agreement is determined by a court to be unenforceable, the rest will remain in effect.

### 13. NOTICE TO NORTH DAKOTA BORROWERS PURCHASING A MOTOR VEHICLE ---THE MOTOR VEHICLE IN THIS TRANS-ACTION MAY BE SUBJECT TO REPOSSESSION. IF IT IS REPOSSESSED AND SOLD TO SOMEONE ELSE, AND ALL AMOUNTS DUE TO THE SECURED PARTY ARE NOT RECEIVED IN THAT SALE, YOU MAY HAVE TO PAY THE DIFFERENCE.

### 14. NOTICE FOR ARIZONA OWNERS OF PROPERTY -- It is unlawful for you to fail to return a motor vehicle that is subject to a security interest, within thirty days after you have received notice of default. The notice will be mailed to the address you gave us. It is your responsibility to notify us if your address changes. The maximum penalty for unlawful failure to return a motor vehicle is one year in prison and/or a fine of $150,000.

### THE PROPERTY DESCRIPTION ON PAGE ONE IS PART OF THIS AGREEMENT. NOTICE: SIGN THIS AGREEMENT ON PAGE ONE.

| | FOR CREDIT UNION USE ONLY | | |
|---|---|---|---|
| REQUESTED: 70,396.82 | MEMBER PAYS PREMIUM FOR: | CHECK NUMBER: PLAN/SUBACCOUNT NO.: | BRANCH NUMBER: PROCESSED BY: **JAG** |
| DATE 12/22/2008 | ☐ APPROVED  ☐ DENIED (Adverse Action Notice Sent) | APPROVED LIMITS: | SIGNATURE $ | LINE OF CREDIT $ | OTHER $ | OTHER $ | DEBT RATIO/SCORE BEFORE   AFTER |

LOAN OFFICER COMMENTS:

SIGNATURES:

x _____

x _____

_____  DATE

_____  DATE

© CUNA MUTUAL GROUP, 1980, 83, 84, 86, 89, 98, 99, 2000, ALL RIGHTS RESERVED                    VXX036 (LASER)

**Consumers Cooperative Credit Union** | CCU STAVELOS KANZ THOMSON JR | Date **12/22/2008**



## SECURITY AGREEMENT

In this agreement all references to "credit union," "we," "our," or "us" mean the credit union whose name appears on this agreement and anyone to whom the credit union assigns or transfers this agreement. All references to "you," "your," and "borrower" mean each person who signs this agreement. All references to "the advance" mean the amount in the box labeled "Amount Advanced" on page one. All references to "the Plan" mean the Credit Agreement under which the advance was obtained. Some of the provisions of this agreement apply only if the Credit Union is state chartered. A credit union has a state charter if its name does not include the words "Federal Credit Union" or "FCU". This is a multi-state document which may be used to lend to borrowers in all states except Louisiana and Wisconsin.

**1. THE SECURITY FOR THE PLAN** -- By signing this security agreement in the signature area or under the statement referring to this agreement which is on the back of the check you receive for the advance, you give us what is known as a security interest in the property described in the "Security Offered" section on page one. The security interest you give includes all accessions. Accessions are things which are attached to or installed in the property now or in the future. The security interest also includes any replacements for the property which you buy within 10 days of the advance or any extensions, renewals or refinancings of the advance. It also includes any money you receive from selling the property or from insurance you have on the property. If the value of the property declines, you promise to give us more property as security if asked to do so.

**2. WHAT THE SECURITY INTEREST COVERS** -- The security interest secures the advance and any extensions, renewals or refinancings of the advance. It also secures any other advances you have now or receive in the future under the Plan and any other amounts or loans, including any credit card loan, you owe us for any reason now or in the future, except any loan secured by your principal residence. If the property is household goods as defined by the Federal Trade Commission Credit Practices Rule, the property will secure only the advance and not other amounts you owe.

**3. OWNERSHIP OF THE PROPERTY** -- You promise that you own the property you give as security or if the Advance is to buy the property, you promise you will use the Advance for that purpose. You promise that no one else has any interest in or claim against the property that you have not already told us about. You promise not to sell or lease the property or to use it as security for a loan with another creditor until the advance is repaid. You promise you will allow no other security interest or lien to attach to the property either by your actions or by operation of law.

**4. PROTECTING THE SECURITY INTEREST** -- If your state issues a title for the property, you promise to have our security interest shown on the title. We may have to file what is called a financing statement to protect our security interest from the claims of others. If asked to do so, you promise to sign a financing statement. You also promise to do whatever else we think is necessary to protect our security interest in the property. You promise to pay all costs, including but not limited to any attorney fees, we incur in protecting our security interest and rights in the property, to the extent permitted by applicable law.

**5. USE OF PROPERTY** -- Until the advance has been paid off, you promise you will: (1) Use the property carefully and keep it in good repair. (2) Obtain our written permission before making major changes to the property or changing the address where the property is kept. (3) Inform us in writing before changing your address. (4) Allow us to inspect the property. (5) Promptly notify us if the property is damaged, stolen or abused. (6) Not use the property for any unlawful purpose.

**6. CONSUMERS' CLAIMS AND DEFENSES NOTICE** -- *The following paragraph applies only when the box on page one is checked.*

NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

**7. PROPERTY INSURANCE, TAXES AND FEES** – You must maintain property insurance on all property that you give as security under the Plan. You may purchase the property insurance from anyone you choose who is acceptable to the Credit Union. The amount and coverage of the property insurance must be acceptable to us. You may provide the property insurance through a policy you already have, or through a policy you get and pay for. You promise to make the insurance policy payable to us and to deliver the policy or proof of coverage to us if asked to do so.

If you cancel your insurance and get a refund, we have a right to the refund. If the property is lost or damaged, we can use the insurance settlement to repair the property or apply it towards what you owe. You authorize us to endorse any draft or check which may be payable to you in order for us to collect any refund or benefits due under your insurance

policy. You also promise to pay all taxes and fees (like registration fees) due on the property.

If you do not pay the taxes or fees on the property when due or keep it insured, we may pay these obligations, but we are not required to do so. Any money we spend for taxes, fees or insurance will be added to the unpaid balance of the advance and you will pay interest on those amounts at the same rate you agreed to pay on the advance. We may receive payments in connection with the insurance from a company which provides the insurance. We may monitor our loans for the purpose of determining whether you and other borrowers have complied with the insurance requirements of our loan agreements or may engage others to do so. The insurance charge added to the advance may include (1) the insurance company's payments to us and (2) the cost of determining compliance with the insurance requirements. If we add amounts for taxes, fees or insurance to the unpaid balance of the advance, we may increase your payments to pay the amount added within the term of the insurance or approximate term of the advance.

**8. NOTICE** -- If you do not purchase the required property insurance, the insurance we may purchase and charge you for will cover only our interest in the property. **The insurance will not be liability insurance and will not satisfy any state financial responsibility or no fault laws.**

**9. DEFAULT** -- You will be in default if you break any promise you make under this agreement. You will also be in default if you are in default under the Plan. If you are pledging property, but have not signed the Plan, you will be in default if anyone is in default who has signed the Plan.

**10. WHAT HAPPENS IF YOU ARE IN DEFAULT** -- *The following paragraph applies to borrowers in Colorado, District of Columbia, Iowa, Kansas, Maine, Massachusetts, Missouri, Nebraska, West Virginia and state chartered credit unions lending to South Carolina borrowers.* When you are in default and after expiration of any right you have under applicable state law to cure your default, we can demand immediate payment of the entire unpaid balance under the Plan without giving you advance notice.

*The following paragraph applies to borrowers in all other states and federally chartered credit unions lending to South Carolina borrowers.* When you are in default, we can require immediate payment (acceleration) of the entire unpaid balance under the Plan. You waive any right you have to demand for payment, notice of intent to accelerate and notice of acceleration.

*The following paragraphs apply to all borrowers.*
You agree the Credit Union has the right to take possession of the property given as security under the Plan, without judicial process, if this can be done without breach of the peace. If we ask, you promise to deliver the property at a time and place we choose. We will not be responsible for any other property not covered by this agreement that you leave inside the property or that is attached to the property. We will try to return that property to you or make it available to you to claim.

After we have possession of the property, we can sell it and apply the money to any amounts you owe us. We will give you notice of any public sale or the date after which a private sale will be held. Our expenses for taking possession of and selling the property will be deducted from the money received from the sale. Those costs may include the cost of storing the property, preparing it for sale and attorney's fees to the extent permitted under state law or awarded under the Bankruptcy Code. The rest of the sale money will be applied to what you owe under the Plan.

If you have agreed to pay the Advance, you will also have to pay any amount that remains unpaid after the sale money has been applied to the unpaid balance of the Advance and to what you owe under this agreement. You agree to pay interest on that amount at the same rate as the Advance, or, if applicable, at the default rate disclosed on the Addendum, until that amount has been paid.

**11. DELAY IN ENFORCING RIGHTS AND CHANGES IN THE PLAN** -- We can delay enforcing any of our rights under this agreement any number of times without losing the ability to exercise them later. We can enforce this agreement against your heirs or legal representatives. If we change the terms of the Plan, you agree that this agreement will continue to protect us.

**12. CONTINUED EFFECTIVENESS** -- If any part of this agreement is determined by a court to be unenforceable, the rest will remain in effect.

**13. NOTICE TO NORTH DAKOTA BORROWERS PURCHASING A MOTOR VEHICLE** --- THE MOTOR VEHICLE IN THIS TRANSACTION MAY BE SUBJECT TO REPOSSESSION, IF IT IS REPOSSESSED AND SOLD TO SOMEONE ELSE, AND ALL AMOUNTS DUE TO THE SECURED PARTY ARE NOT RECEIVED IN THAT SALE, YOU MAY HAVE TO PAY THE DIFFERENCE.

**14. NOTICE FOR ARIZONA OWNERS OF PROPERTY** -- It is unlawful for you to fail to return a motor vehicle that is subject to a security interest, within thirty days after you have received notice of default. The notice will be mailed to the address you gave us. It is your responsibility to notify us if your address changes. The maximum penalty for unlawful failure to return a motor vehicle is one year in prison and/or a fine of $150,000.

**THE PROPERTY DESCRIPTION ON PAGE ONE IS PART OF THIS AGREEMENT. NOTICE: SIGN THIS AGREEMENT ON PAGE ONE.**

© CUNA MUTUAL GROUP, 1980, 82, 84, 86, 89, 98, 99, 2000, ALL RIGHTS RESERVED                    VXX036 (LASER)

**CONSUMERS**
CREDIT UNION

*Your life. Our commitment.*

Consumer

## CONSUMER'S CHOICE PROTECTION CONTRACT

| BORROWER 1 NAME | BORROWER 2 NAME | |
|---|---|---|
| GUSTAVE S KOZARZEWSKI JR | | |

**This contract will be governed by the local law of the State of Illinois.**

Consumer's Choice Protection (referred to as "the program") is voluntary and not required in order to obtain credit. We will not consider whether or not you elect Consumer's Choice Protection in making our credit decision.

## COVERED LOAN

**LOAN NUMBER:**

If the Covered Loan is an open-end credit plan, your coverage election applies to all advances under the plan, unless the Loan Number above references a specific advance or subaccount.

### OPTIONS

| YOU ELECT: (check only one box) | ☐ Plan 1<br>- Loss of Life<br>- Disability<br>- Unemployment | ☐ Plan 2<br>- Disability<br>- Unemployment | ☐ Plan 3<br>- Loss of Life<br>- Disability | ☐ Plan 4<br>- Loss of Life | ☒ No Protection |
|---|---|---|---|---|---|
| Cost per $100 of the Monthly Outstanding Loan Balance* | $0.559 | $0.490 | $0.284 | $0.091 | |
| Estimated Total Fees for Option chosen (Closed-End Only) | $ | | | | |

*If the outstanding loan balance is greater than $100,000, the rate will not be applied to the amount that exceeds $100,000.

The program contains certain terms and exclusions. You are eligible for the program if you are a borrower on the loan and under age 70 on the effective date of protection.

The program protects the first two borrowers listed on the lending agreement. The protected borrower(s) may not qualify for all benefits.

This contract contains the conditions upon which we will cancel or postpone all or a portion of the interest, daily payment, or protected balance. You, meaning a borrower enrolled in the program, should read this contract carefully and keep it in your files. This contract explains the terms that both you and we agree to follow for the program. This contract replaces any and all credit insurance policies and/or certificates, similar payment protection plans, and program contracts you previously entered into with respect to the loan.

### DEFINITIONS

**ACCIDENTAL INJURY** means an occurrence that is unforeseen, unexpected, involuntary and due to an external cause.
**ADMINISTRATOR** means CUMIS Insurance Society, Inc., 5910 Mineral Point Road, Madison, Wisconsin 53705, or one of its affiliates, or a contracted third party.
**ADVANCE** means each extension of credit we provide to you under a loan.
**BORROWER** means a person who is obligated to repay the advance to us, either principally or jointly and severally. It does not include guarantors.
**DAILY PAYMENT** means the protected periodic payment converted to an equivalent amount per day.
**EFFECTIVE DATE OF PROTECTION** means the later of the date you enrolled in the program option, the date your protection under the program is reinstated, or the date of the advance.
**FULL-TIME EMPLOYMENT or EMPLOYED FULL-TIME** means actively working for income 25 hours or more per week.
**LOAN** means a loan identified on this contract as a covered loan.
**NON-PROTECTED ADVANCE** means any advance not protected according to the Non-Protected Events section of this contract.
**PROTECTED BALANCE** means the pay-off amount owed under the loan on the first day of a protected event less any non-protected advances.
**PROTECTED PERIODIC PAYMENT** means the minimum payment amount, including principal, interest, and the program fee, due on the protected balance. It does not include any other fee or insurance amount not included in the protected balance, scheduled balloon payment, escrow amounts, the amount of any minimum payment that represents past due payments, or amounts that exceed any credit limit for the loan. For balloon loans, the protected periodic payment will be determined using the minimum payment amount due for the period immediately preceding the scheduled balloon payment. For variable rate and/or variable payment loans, the protected periodic payment will remain equal to the protected periodic payment as of the first day of the protected event.
**WE, US, OUR** means the Consumers Cooperative Credit Union.

### GENERAL PROVISIONS

**PROOF OF A PROTECTED EVENT.** You must notify us or our administrator when a protected event occurs. Claim forms and written evidence may be required periodically to show that conditions of the program are satisfied. If you do not report a claim or provide initial or continued proof within one year of the date requested, we will not accept (or continue to accept) your claim.

(continued on next page)

Your signature below means:
- Your election above will remain in effect, according to the terms of the Consumer's Choice Protection Contract, unless subsequently modified.
- You agree that you have received and thoroughly read the Consumer's Choice Protection Contract.
- You authorize the program fee to be added to your outstanding balance each month.

| X *(signature)* | 12-22-2008 | X | 12-22-2008 |
|---|---|---|---|
| BORROWER 1 SIGNATURE | DATE | BORROWER 2 SIGNATURE | DATE |

© CUNA MUTUAL GROUP, 2006, ALL RIGHTS RESERVED

KILDA0 (LASER)

BORROWER 1 NAME
**GUSTAVE S KOZARZEWSKI JR**

BORROWER 2 NAME

## PROGRAM CONTRACT *(continued)*

**PAST EVENTS.** The program does not protect you from events that occurred before your enrollment in the program.
If you enroll in the program as a single borrower and add a joint borrower at a later date, the joint borrower will be considered to have enrolled in the program on the date of becoming a joint borrower.

**TAX IMPLICATIONS.** You may be subject to federal, state, and local taxes on the amount of a cancelled or postponed debt. You should consult your tax advisor. Neither we, nor our administrator, are able to provide you with tax guidance.

**PROGRAM FEE.** The program fee is the amount you pay for protection under the program. The rate used to determine the program fee is subject to change. You will receive notice before any increase goes into effect. The program fee will be added to the outstanding balance each month.

**CHANGING THE TERMS OF THIS CONTRACT.** We have the right to change (including the addition or deletion of) the terms of this contract and apply those changes to the outstanding balance. You will receive notice before any change goes into effect. Your continued payment of the program fee will constitute your acceptance of the change in terms. You have the right to cancel this contract at any time.

**CHANGING BETWEEN OPTIONS.** If you change from one program option (the "prior program option") to a different program option (the "current program option"), and an event occurs that does not qualify for protection under the current program option because of the new effective date of protection, we will recognize the continuous time protected for a specific event under both program options. However, the level of protection available will be the lesser of:
- the protection that would be provided under the current program option if the effective date of protection was adjusted to be the same as the effective date of protection under the prior program option; or
- the protection that would have been provided under the prior program option if it had remained in effect.

**TERMINATION OF THE PROGRAM.** You may terminate this program contract at any time by providing us with written notice at least 5 business days prior to the requested termination date. If you do so within 30 days of enrolling in the program, we will credit the outstanding balance for any fees charged for the program. Your protection under the program will automatically terminate:
- when you reach age 70.
- when any portion of any payment of the loan is past due for 90 days or more. If you bring your loan current, your protection under the program will not be reinstated automatically. You must re-enroll to participate in the program.
- when you fail to pay the program fee.
- for any other reason if we give you written notice at least 30 days in advance of the termination (or as required by law).

Termination will not affect benefits for a protected event that occurred prior to the termination date as long as an outstanding balance remains on the loan.

**ERRORS AND ADJUSTMENTS.** If we cancel or postpone more or less than we should have according to the terms of this contract, we will adjust the balance when the error is discovered.

If we issued protection under the program due to our own error, and we recognize our error before a protected event occurs, our obligation to you is limited to return of any program fee you paid. If we recognize our error after a protected event occurs, we will provide benefits for the protected event that occurred, and we will terminate the program for any future events as of the date we recognize our error.

However, if you misstated a material fact when enrolling for the program that caused us to issue protection under the program when we otherwise wouldn't have, we will return any program fee you paid when we discover this, and we will not provide any benefits even if an otherwise protected event has already occurred.

**WAIVER OF PROVISIONS.** We reserve the right to waive any of the requirements described in this contract, at our sole discretion. If we do so, we will not be obligated to waive the same requirements in any other situation and our waiver will not constitute a waiver of any other requirements.

**CONTINUED EFFECTIVENESS.** If any part of this contract is determined to be unenforceable, the rest will remain in effect.

### PROTECTED EVENTS

A loan is protected according to the terms of this contract if you are enrolled for the specified program protection and you have paid the applicable program fee.

**LOSS OF LIFE (Included with Plan 1, Plan 3 and Plan 4)**
If you die before your 70th birthday, we will cancel 100% of the Loss of Life amount.
For each protected borrower, the Loss of Life amount is the lesser of the protected balance or $100,000.

**DISABILITY (Included with Plan 1, Plan 2 and Plan 3)**
Disability means that you are:
- unable to engage in the significant duties of your occupation for at least 14 consecutive days due to an accidental injury or a sickness; and
- under the regular care and treatment of a physician; and
- not working at any job, or combination of jobs, paying you an income equal to or exceeding 80% of the wages you were earning from your full-time employment immediately preceding the date you became disabled.

If you are employed full-time and become disabled, we will cancel the daily payment for each day that you are disabled:
- beginning with the 1st day of Disability; and
- for the next 12 months or until the entire protected balance is cancelled, but not more than $12,000 per period of Disability.

**UNEMPLOYMENT (Included with Plan 1 and Plan 2)**
Involuntary Unemployment means that for at least 14 consecutive days you are not working at any job, or any combination of jobs for 25 hours or more per week and that you are actively seeking full-time employment. Involuntary Unemployment includes honorable discharge from active duty service by the United States Armed Forces. Involuntary Unemployment does not include any annual, regularly scheduled, or seasonal layoff or any period of unemployment that occurs while you are a temporary employee, independent contractor, self-employed, or employed by a joint borrower. It also does not include any retirement, vacation, strike, unionized labor dispute, lockout, sabbatical, family leave, disability, termination due to your willful or criminal misconduct, resignation by agreement with your employer, voluntary furlough, voluntary unemployment or voluntary loss of wages.

If you are employed full-time and become Involuntarily Unemployed, we will cancel the daily payment for each day that you are Involuntarily Unemployed:
- beginning with the 1st day of Involuntary Unemployment or the first day after any severance pay has ceased, whichever comes later; and
- for the next 6 months or until the entire protected balance has been cancelled, but not more than $3,000 per period of Involuntary Unemployment.

For Involuntary Unemployment, we will initially require proof that you have received federal, state, or railroad unemployment benefits for the period of unemployment to determine if you meet the definition of Involuntarily Unemployed. You must provide evidence of your continued Involuntary Unemployment each month by demonstrating your continued registration with a state unemployment office or a recognized employment agency.

### NON-PROTECTED EVENTS

An advance is not protected by the program if the event:
- is due to the commission of a felony.
- is caused by or results from an atomic explosion or any other release of nuclear energy (except when used solely for medical treatment).
Additional non-protected events are specified below.

An advance is not protected by Loss of Life protection if the event:
- occurs within the 6 months immediately following the effective date of protection for the advance and is related to a pre-existing condition for which you received advice, diagnosis, or treatment (including medication) within the 6 months immediately preceding the effective date of protection for the advance.
- is the result of a suicide or an intentionally self-inflicted injury that occurs within the 12 months immediately following the effective date of protection for the advance.
- occurs on or after age 70.

© CUNA MUTUAL GROUP, 2008, ALL RIGHTS RESERVED   KILDA0 (LASER)

| BORROWER 1 NAME | BORROWER 2 NAME |
|---|---|
| **GUSTAVE S KOZARZEWSKI JR** | |

## PROGRAM CONTRACT *(continued)*

An advance is not protected by **Disability** protection if the event:
- occurs within the 6 months immediately following the effective date of protection for the advance and is related to a pre-existing condition for which you received advice, diagnosis, or treatment (including medication) within the 6 months immediately preceding the effective date of protection for the advance.
- is related to a normal pregnancy.
- is due to an intentionally self-inflicted injury.
- occurs on or after age 70.

An advance is not protected by **Unemployment** protection if the event:
- occurs within the 6 months immediately following the effective date of protection for the advance.
- is due to an intentionally self-inflicted injury.
- occurs on or after age 70.

### CONCURRENT PROTECTED EVENTS

If we are canceling the daily payment for one protected event and another protected event occurs:
- the amount cancelled will be applied to the dollar limitation for the first protected event.
- we will not cancel more than the daily payment for any one day.

### RECURRENT EVENTS

If you incur a claim for the same type of protected event again within one year after you have recovered or returned to work, we will consider this a continuation of the prior event. For disability, however, this only applies if you are disabled due to the same condition. Any remaining time period available from the earlier protected event will continue beginning with the date of the recurrence. If you incur a claim for the same type of protected event more than one year after recovering or returning to work, we will consider it a new protected event. This provision applies whether you return to work with the same or a different employer.

### STATUS OF THE LOAN AFTER A PROTECTED EVENT

During the time it takes to process your claim, you remain responsible for making at least the minimum payment due on the loan by the payment due date. You are responsible for any difference between the minimum payment due on the loan and the amount cancelled or postponed. If you have a valid claim, we will refund the portion of your payment(s) that should have been cancelled or postponed according to the terms of this contract.

**Contact us with any questions on the program.**

© CUNA MUTUAL GROUP, 2006, ALL RIGHTS RESERVED

KILDA0 (LASER)

# CERTIFICATE OF TITLE OF A VEHICLE

# EXHIBIT B

| VEHICLE IDENTIFICATION NO | YEAR | MAKE | MODEL | BODY STYLE | TITLE NO. |
|---|---|---|---|---|---|
| 1G1YY26E765103642 | 2006 | CHEVROLET | CORVETTE Z06 | COUPE | X9161003040 |

1G1YY26E765103642

| DATE ISSUED | ODOMETER | CCM | PURCHASED | PURCHASE DATE |
|---|---|---|---|---|
| 06/10/09 | 13280 | | USED | 03/28/09 |

13280

MOBILE HOME SQ. FT.

TYPE OF TITLE
CORRECTED/DUP

MAILING ADDRESS

CONSUMERS CREDIT UNION
1210 S LAKE ST
MUNDELEIN IL 60060-3706



LEGEND(S)

ACTUAL MILEAGE

OWNER(S) NAME AND ADDRESS

GUTANVE S KOZARZEWSKI JR
10680 PAINTED DESERT CT
HUNTLEY IL 60142

FIRST LIENHOLDER NAME AND ADDRESS

CONSUMERS CREDIT UNION
1210 S LAKE ST
MUNDELEIN IL 60060-3706

SECOND LIENHOLDER NAME AND ADDRESS

THIS IS A DUPLICATE CERTIFICATE AND MAY
BE SUBJECT TO THE RIGHTS OF A PERSON
UNDER THE ORIGINAL CERTIFICATE

RELEASE OF LIEN
The Lienholder on the vehicle described in this Certificate does hereby state that the lien is released and discharged.

Firm Name _____ By _____ Signature of Authorized Agent _____ Date _____

Firm Name _____ By _____ Signature of Authorized Agent _____ Date _____

NEW LIEN ASSIGNMENT: The information below must be on an application for title and presented to the Secretary of State.
Secured Party _____ Address _____

▶ Federal and State law requires that you state the mileage in connection with the transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment.

## ASSIGNMENT OF TITLE

The undersigned hereby certifies that the vehicle described in this title has been transferred to the following printed name and address:

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:

[ ] 1. The mileage stated is in excess of its mechanical limits.
[ ] 2. The odometer reading is not the actual mileage.
WARNING-ODOMETER DISCREPANCY.

"If the vehicle is one of more than 5 commercial vehicles owned by me, I certify also that the vehicle is not damaged in excess of 33 1/3% of its fair market value unless this document is accompanied by a salvage application."

NO
TENTHS

ODOMETER READING
Signature(s) of Seller(s) _____

Printed Name(s) of Seller(s) _____ DATE OF SALE _____
I am aware of the above odometer certification made by seller.

Signature(s) of Buyer(s) _____ Printed Name _____

I, Jesse White, Secretary of State of the State of Illinois, do hereby certify that according to the records on file with my Office, the person or entity named hereon is the owner of the vehicle described hereon, which is subject to the above named liens and encumbrances, if any. IN WITNESS WHEREOF, I HAVE AFFIXED MY SIGNATURE AND THE GREAT SEAL OF THE STATE OF ILLINOIS AT SPRINGFIELD.

CONTROL NO G8831066

*Jesse White*
JESSE WHITE, Secretary of State

**DO NOT ACCEPT TITLE SHOWING ANY ERASURES, ALTERATIONS OR MUTILATIONS.**

# EXHIBIT C



**CONSUMERS**
CREDIT UNION

*Your life. Our commitment.*
1210 S. Lake Street
P.O. Box 503
Mundelein, IL 60060-0503

December 15, 2011

TO WHOM IT MAY CONCERN:

THIS IS TO CERTIFY THAT CONSUMERS CREDIT UNION HAS NO RIGHT OR INTEREST IN THE FOLLOWING DESCRIBED VEHICLE:

*NAME*   **GUSTAVE S KOZARZEWSKI JR**

*YEAR*   **2006**

*MAKE*   **CHEVROLET CORVETTE**

*VIN*   **1G1YY26E765103642**

BY:

JENNIFER JOHNSON

THIS IS A LIEN RELEASE. USE THIS AT YOUR DEPARTMENT OF MOTOR VEHICLES TO OBTAIN A LIEN FREE TITLE OR A DUPLICATE TITLE FOR YOUR CAR.

Waukegan ■ Mundelein ■ North Waukegan ■ Gurnee ■ Round Lake Beach ■ Volo

**EXHIBIT D**

## NADA Used Car Guide
Monday, December 01, 2014

## Vehicle Appraisal Retail Value

Region:              Midwest - December 2011           Reference #:
Vehicle Description: 2006 CHEVROLET                     VIN:          1G1YY26E765103642
                     Corvette-V8
                     Hardtop 2D Z06

NADA Base Clean Retail:                        $37,850

Mileage Value (77,500 Miles)                       $0

Accessories Value:                                 $0

NADA Adjusted Clean Retail:                    $37,850

Options:

Options Total:                                     $0

NADA assumes no responsibility or liability for any errors or omissions
or any revisions or additions made by anyone on this report.
Copyright NADA Services Corp. 2014
All rights reserved.



**EXHIBIT E**

LOANLINER

**Open-End Voucher
and Security Agreement**

| BORROWER INFORMATION | | | |
|---|---|---|---|

| BORROWER 1 NAME | ACCOUNT NUMBER | AMOUNT REQUESTED | DATE |
|---|---|---|---|
| DANA KOZARZEWSKI | | $  15,904.35 | 12/20/2008 |

| BORROWER 1 ADDRESS | HOME TELEPHONE NUMBER | SOCIAL SECURITY NUMBER | PURPOSE: |
|---|---|---|---|
| HUNTLEY            IL   60142-000 | | | |

| BORROWER 2 NAME | ACCOUNT NUMBER | DEPOSIT CHECK IN ACCOUNT NUMBER/OTHER: |
|---|---|---|
| | | |

| BORROWER 2 ADDRESS | SOCIAL SECURITY NUMBER | CHECK PAYABLE TO:  **CCU PAYOFF LOAN# 01**
**$15,904.35** |
|---|---|---|
| | | REPAYMENT METHOD: |

| BORROWER 1 EMPLOYER NAME | WORK TELEPHONE NUMBER | DATE HIRED | GROSS MONTHLY SALARY |
|---|---|---|---|
| | | | $          5,600.00 |

| BORROWER 2 EMPLOYER NAME | WORK TELEPHONE NUMBER | DATE HIRED | GROSS MONTHLY SALARY |
|---|---|---|---|
| | | | $ |

NOTICE: YOU DON'T HAVE TO INCLUDE INCOME FROM CHILD SUPPORT, SEPARATE MAINTENANCE, OR ALIMONY UNLESS YOU WANT THE CREDIT UNION TO CONSIDER IT.

| | SOURCE OF OTHER INCOME | OTHER MONTHLY INCOME |
|---|---|---|

**FOR CREDIT UNION USE ONLY**

| REPAYMENT TERMS | | | | |
|---|---|---|---|---|

| DAILY PERIODIC RATE | **ANNUAL PERCENTAGE RATE** | INTEREST RATE IS: OTHER FEES (Amount and Description) | | NEW BALANCE THIS SUBACCOUNT |
|---|---|---|---|---|
| .03695890% | **13.4900%** | | | $ |

| AMOUNT ADVANCED | PAYMENT AMOUNT | DATE DUE | PAYMENT FREQUENCY | LINE OF CREDIT LIMIT | REMAINING LIMIT |
|---|---|---|---|---|---|
| $   15,904.35 | $       295.05 | 02-03-2009 | M | $ | $ |

| SECURITY OFFERED ☐ CONSUMERS' CLAIMS AND DEFENSES -- IF CHECKED, SEE PARAGRAPH 6 FOR NOTICE | | | | |
|---|---|---|---|---|

THE ADVANCE IS SECURED BY YOUR SHARES, ALL PROPERTY SECURING OTHER PLAN ADVANCES AND LOANS RECEIVED IN THE PAST OR IN THE FUTURE, AND THE FOLLOWING PROPERTY/MODEL

| PROPERTY/MODEL | | YEAR | I.D. NUMBER | VALUE | KEY NUMBER |
|---|---|---|---|---|---|
| FORD | EXPEDITION | 2004 | 1FMFU16L14LA87168 | $ | |
| FORD | EXCURSION | 2000 | | $ | |
| | | | | $ | |
| | | | | $ | |

| PLEDGE OF SHARES AND/OR DEPOSITS  $ | ACCOUNT NUMBER | PLEDGE OF SHARES AND/OR DEPOSITS  $ | ACCOUNT NUMBER |
|---|---|---|---|

| SIGNATURES | | | |
|---|---|---|---|

By signing below, by endorsing the proceeds check or by using the amount advanced and deposited into your share/share draft account you agree:
1. To make and be bound by the terms of this Security Agreement including the cross collateral clause;
2. The Credit Union will rely on the information above and your credit report to make a credit decision;
3. To make payments as disclosed above in accordance with the terms of your Plan.

| X | (SEAL) | X | (SEAL) |
|---|---|---|---|
| BORROWER 1 SIGNATURE | DATE | BORROWER 2 SIGNATURE | DATE |

| X | (SEAL) | X | (SEAL) |
|---|---|---|---|
| SIGNATURE ☐ OWNER OF COLLATERAL (Other than a Borrower) | DATE | SIGNATURE ☐ OWNER OF COLLATERAL (Other than a Borrower) | DATE |

© CUNA MUTUAL GROUP, 1980, 82, 84, 86, 89, 98, 99, 2000, ALL RIGHTS RESERVED                    VXX036 (LASER)

**Consumers Cooperative Credit Union**    ГЛАВА КОЗЕТ КПЛ    Date **12/20/2008**



# SECURITY AGREEMENT

In this agreement all references to "credit union," "we," "our," or "us" mean the credit union whose name appears on this agreement and anyone to whom the credit union assigns or transfers this agreement. All references to "you," "your," and "borrower" mean each person who signs this agreement. All references to "the advance" mean the amount in the box labeled "Amount Advanced" on page one. All references to "the Plan" mean the Credit Agreement under which the advance was obtained. Some of the provisions of this agreement apply only if the Credit Union is state chartered. A credit union has a state charter if its name does not include the words "Federal Credit Union" or "FCU". This is a multi-state document which may be used to lend to borrowers in all states except Louisiana and Wisconsin.

**1.    THE SECURITY FOR THE PLAN --** By signing this security agreement in the signature area or under the statement referring to this agreement which is on the back of the check you receive for the advance, you give us what is known as a security interest in the property described in the "Security Offered" section on page one. The security interest you give includes all accessions. Accessions are things which are attached to or installed in the property now or in the future. The security interest also includes any replacements for the property which you buy within 10 days of the advance or any extensions, renewals or refinancings of the advance. It also includes any money you receive from selling the property or from insurance you have on the property. If the value of the property declines, you promise to give us more property as security if asked to do so.

**2.    WHAT THE SECURITY INTEREST COVERS --** The security interest secures the advance and any extensions, renewals or refinancings of the advance. It also secures any other advances you have now or receive in the future under the Plan and any other amounts or loans, including any credit card loan, you owe us for any reason now or in the future, except any loan secured by your principal residence. If the property is household goods as defined by the Federal Trade Commission Credit Practices Rule, the property will secure only the advance and not other amounts you owe.

**3.    OWNERSHIP OF THE PROPERTY --** You promise that you own the property you give as security or if the Advance is to buy the property, you promise you will use the Advance for that purpose. You promise that no one else has any interest in or claim against the property that you have not already told us about. You promise not to sell or lease the property or to use it as security for a loan with another creditor until the advance is repaid. You promise you will allow no other security interest or lien to attach to the property either by your actions or by operation of law.

**4.    PROTECTING THE SECURITY INTEREST --** If your state issues a title for the property, you promise to have our security interest shown on the title. We may have to file what is called a financing statement to protect our security interest from the claims of others. If asked to do so, you promise to sign a financing statement. You also promise to do whatever else we think is necessary to protect our security interest in the property. You promise to pay all costs, including but not limited to any attorney fees, we incur in protecting our security interest and rights in the property, to the extent permitted by applicable law.

**5.    USE OF PROPERTY --** Until the advance has been paid off, you promise you will: (1) Use the property carefully and keep it in good repair. (2) Obtain our written permission before making major changes to the property or changing the address where the property is kept. (3) Inform us in writing before changing your address. (4) Allow us to inspect the property. (5) Promptly notify us if the property is damaged, stolen or abused. (6) Not use the property for any unlawful purpose.

**6.    CONSUMERS' CLAIMS AND DEFENSES NOTICE --** *The following paragraph applies only when the box on page one is checked.*

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

**7.    PROPERTY INSURANCE, TAXES AND FEES --** You must maintain property insurance on all property that you give as security under the Plan. You may purchase the property insurance from anyone you choose who is acceptable to the Credit Union. The amount and coverage of the property insurance must be acceptable to us. You may provide the property insurance through a policy you already have, or through a policy you get and pay for. You promise to make the insurance policy payable to us and to deliver the policy or proof of coverage to us if asked to do so.

If you cancel your insurance and get a refund, we have a right to the refund. If the property is lost or damaged, we can use the insurance settlement to repair the property or apply it towards what you owe. You authorize us to endorse any draft or check which may be payable to you in order for us to collect any refund or benefits due under your insurance policy. You also promise to pay all taxes and fees (like registration fees) due on the property.

If you do not pay the taxes or fees on the property when due or keep it insured, we may pay these obligations, but we are not required to do so. Any money we spend for taxes, fees or insurance will be added to the unpaid balance of the advance and you will pay interest on those amounts at the same rate you agreed to pay on the advance. We may receive payments in connection with the insurance from a company which provides the insurance. We may monitor our loans for the purpose of determining whether you and other borrowers have complied with the insurance requirements of our loan agreements or may engage others to do so. The insurance charge added to the advance may include (1) the insurance company's payments to us and (2) the cost of determining compliance with the insurance requirements. If we  add amounts for taxes, fees or insurance to the unpaid balance of the advance, we may increase your payments to pay the amount added within the term of the insurance or approximate term of the advance.

**8.    NOTICE --** If you do not purchase the required property insurance, the insurance we may purchase and charge you for will cover only our interest in the property. **The insurance will not be liability insurance and will not satisfy any state financial responsibility or no fault laws.**

**9.    DEFAULT --** You will be in default if you break any promise you make under this agreement. You will also be in default if you are in default under the Plan. If you are pledging property, but have not signed the Plan, you will be in default if anyone is in default who has signed the Plan.

**10.    WHAT HAPPENS IF YOU ARE IN DEFAULT --** *The following paragraph applies to borrowers in Colorado, District of Columbia, Iowa, Kansas, Maine, Massachusetts, Missouri, Nebraska, West Virginia and state chartered credit unions lending to South Carolina borrowers.* When you are in default and after expiration of any right you have under applicable state law to cure your default, we can demand immediate payment of the entire unpaid balance under the Plan without giving you advance notice.

*The following paragraph applies to borrowers in all other states and federally chartered credit unions lending to South Carolina borrowers.* When you are in default, we can require immediate payment (acceleration) of the entire unpaid balance under the Plan. You waive any right you have to demand for payment, notice of intent to accelerate and notice of acceleration.

(Continued on next page)

© CUNA MUTUAL GROUP, 1980, 82, 84, 86, 89, 98, 99, 2000, ALL RIGHTS RESERVED    VXX036 (LASER)

| Consumers Cooperative Credit Union | ANNA KOZAREWSKI | Date 12/20/2008 |

*The following paragraphs apply to all borrowers.*

You agree the Credit Union has the right to take possession of the property given as security under the Plan, without judicial process, if this can be done without breach of the peace. If we ask, you promise to deliver the property at a time and place we choose. We will not be responsible for any other property not covered by this agreement that you leave inside the property or that is attached to the property. We will try to return that property to you or make it available to you to claim.

After we have possession of the property, we will sell it and apply the money to any amounts you owe us. We will give you notice of any public sale or the date after which a private sale will be held. Our expenses for taking possession of and selling the property will be deducted from the money received from the sale. Those costs may include the cost of storing the property, preparing it for sale and attorney's fees to the extent permitted under state law or awarded under the Bankruptcy Code. The rest of the sale money will be applied to what you owe under the Plan.

If you have agreed to pay the Advance, you will also have to pay any amount that remains unpaid after the sale money has been applied to the unpaid balance of the Advance and to what you owe under this agreement. You agree to pay interest on that amount at the same rate as the Advance, or, if applicable, at the default rate disclosed on the Addendum, until that amount has been paid.

**11.  DELAY IN ENFORCING RIGHTS AND CHANGES IN THE PLAN**
We can delay enforcing any of our rights under this agreement any number of times without losing the ability to exercise our rights later. We can enforce this agreement against your heirs or legal representatives. If we change the terms of the Plan, you agree that this agreement will continue to protect us.

**12.  CONTINUED EFFECTIVENESS --** If any part of this agreement is determined by a court to be unenforceable, the rest will remain in effect.

**13.  NOTICE TO NORTH DAKOTA BORROWERS PURCHASING A MOTOR VEHICLE ---**THE MOTOR VEHICLE IN THIS TRANSACTION MAY BE SUBJECT TO REPOSSESSION. IF IT IS REPOSSESSED AND SOLD TO SOMEONE ELSE, AND ALL AMOUNTS DUE TO THE SECURED PARTY ARE NOT RECEIVED IN THAT SALE, YOU MAY HAVE TO PAY THE DIFFERENCE.

**14.  NOTICE FOR ARIZONA OWNERS OF PROPERTY --** It is unlawful for you to fail to return a motor vehicle that is subject to a security interest, within thirty days after you have received notice of default. The notice will be mailed to the address you gave us. It is your responsibility to notify us if your address changes. The maximum penalty for unlawful failure to return a motor vehicle is one year in prison and/or a fine of $150,000.

**THE PROPERTY DESCRIPTION ON PAGE ONE IS PART OF THIS AGREEMENT. NOTICE: SIGN THIS AGREEMENT ON PAGE ONE.**

| FOR CREDIT UNION USE ONLY |
|---|

| REQUESTED:  15,904.35 | MEMBER PAYS PREMIUM FOR: | CHECK NUMBER: | | BRANCH NUMBER: |
|---|---|---|---|---|
| DATE  12/20/2008 | ☐ APPROVED  ☐ DENIED (Adverse Action Notice Sent) | PLAN/SUBACCOUNT NO.: | | PROCESSED BY: |

| DATE 12/20/2008 | APPROVED LIMITS: | SIGNATURE $ | LINE OF CREDIT $ | OTHER $ | OTHER $ | DEBT RATIO/SCORE BEFORE    AFTER  88536 |

LOAN OFFICER COMMENTS:

SIGNATURES:

X _____    DATE          X _____    DATE

© CUNA MUTUAL GROUP, 1980, 82, 84, 86, 89, 98, 99, 2000, ALL RIGHTS RESERVED

DANA KOZLOWSKI    Date **12/20/2008**



# SECURITY AGREEMENT

In this agreement all references to "credit union," "we," "our," or "us" mean the credit union whose name appears on this agreement and anyone to whom the credit union assigns or transfers this agreement. All references to "you," "your," and "borrower" mean each person who signs this agreement. All references to "the advance" mean the amount in the box labeled "Amount Advanced" on page one. All references to "the Plan" mean the Credit Agreement under which the advance was obtained. Some of the provisions of this agreement apply only if the Credit Union is state chartered. A credit union has a state charter if its name does not include the words "Federal Credit Union" or "FCU". This is a multi-state document which may be used to lend to borrowers in all states except Louisiana and Wisconsin.

**1. THE SECURITY FOR THE PLAN --** By signing this security agreement in the signature area or under the statement referring to this agreement which is on the back of the check you receive for the advance, you give us what is known as a security interest in the property described in the "Security Offered" section on page one. The security interest you give includes all accessions. Accessions are things which are attached to or installed in the property now or in the future. The security interest also includes any replacements for the property which you buy within 10 days of the advance or any extensions, renewals or refinancings of the advance. It also includes any money you receive from selling the property or from insurance you have on the property. If the value of the property declines, you promise to give us more property as security if asked to do so.

**2. WHAT THE SECURITY INTEREST COVERS --** The security interest secures the advance and any extensions, renewals or refinancings of the advance. It also secures any other advances you have now or receive in the future under the Plan and any other amounts or loans, including any credit card loan, you owe us for any reason now or in the future, except any loan secured by your principal residence. If the property is household goods as defined by the Federal Trade Commission Credit Practices Rule, the property will secure only the advance and not other amounts you owe.

**3. OWNERSHIP OF THE PROPERTY --** You promise that you own the property you give as security or if the Advance is to buy the property, you promise you will use the Advance for that purpose. You promise that no one else has any interest in or claim against the property that you have not already told us about. You promise not to sell or lease the property or to use it as security for a loan with another creditor until the advance is repaid. You promise you will allow no other security interest or lien to attach to the property either by your actions or by operation of law.

**4. PROTECTING THE SECURITY INTEREST --** If your state issues a title for the property, you promise to have our security interest shown on the title. We may have to file what is called a financing statement to protect our security interest from the claims of others. If asked to do so, you promise to sign a financing statement. You also promise to do whatever else we think is necessary to protect our security interest in the property. You promise to pay all costs, including but not limited to any attorney fees, we incur in protecting our security interest and rights in the property, to the extent permitted by applicable law.

**5. USE OF PROPERTY --** Until the advance has been paid off, you promise you will: (1) Use the property carefully and keep it in good repair. (2) Obtain our written permission before making major changes to the property or changing the address where the property is kept. (3) Inform us in writing before changing your address. (4) Allow us to inspect the property. (5) Promptly notify us if the property is damaged, stolen or abused. (6) Not use the property for any unlawful purpose.

**6. CONSUMERS' CLAIMS AND DEFENSES NOTICE --** *The following paragraph applies only when the box on page one is checked.*

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

**7. PROPERTY INSURANCE, TAXES AND FEES --** You must maintain property insurance on all property that you give as security under the Plan. You may purchase the property insurance from anyone you choose who is acceptable to the Credit Union. The amount and coverage of the property insurance must be acceptable to us. You may provide the property insurance through a policy you already have, or through a policy you get and pay for. You promise to make the insurance policy payable to us and to deliver the policy or proof of coverage to us if asked to do so.

If you cancel your insurance and get a refund, we have a right to the refund. If the property is lost or damaged, we can use the insurance settlement to repair the property or apply it towards what you owe. You authorize us to endorse any draft or check which may be payable to you in order for us to collect any refund or benefits due under your insurance

policy. You also promise to pay all taxes and fees (like registration fees) due on the property.

If you do not pay the taxes or fees on the property when due or keep it insured, we may pay these obligations, but we are not required to do so. Any money we spend for taxes, fees or insurance will be added to the unpaid balance of the advance and you will pay interest on those amounts at the same rate you agreed to pay on the advance. We may receive payments in connection with the insurance from a company which provides the insurance. We may monitor our loans for the purpose of determining whether you and other borrowers have complied with the insurance requirements of our loan agreements or may engage others to do so. The insurance charge added to the advance may include (1) the insurance company's payments to us and (2) the cost of determining compliance with the insurance requirements. If we add amounts for taxes, fees or insurance to the unpaid balance of the advance, we may increase your payments to pay the amount added within the term of the insurance or approximate term of the advance.

**8. NOTICE --** If you do not purchase the required property insurance, the insurance we may purchase and charge you for will cover only our interest in the property. **The insurance will not be liability insurance and will not satisfy any state financial responsibility or no fault laws.**

**9. DEFAULT --** You will be in default if you break any promise you make under this agreement. You will also be in default if you are in default under the Plan. If you are pledging property, but have not signed the Plan, you will be in default if anyone is in default who has signed the Plan.

**10. WHAT HAPPENS IF YOU ARE IN DEFAULT --** *The following paragraph applies to borrowers in Colorado, District of Columbia, Iowa, Kansas, Maine, Massachusetts, Missouri, Nebraska, West Virginia and state chartered credit unions lending to South Carolina borrowers.* When you are in default and after expiration of any right you have under applicable state law to cure your default, we can demand immediate payment of the entire unpaid balance under the Plan without giving you advance notice.

*The following paragraph applies to borrowers in all other states and federally chartered credit unions lending to South Carolina borrowers.* When you are in default, we can require immediate payment (acceleration) of the entire unpaid balance under the Plan. You waive any right you have to demand for payment, notice of intent to accelerate and notice of acceleration.
*The following paragraphs apply to all borrowers.*
You agree the Credit Union has the right to take possession of the property given as security under the Plan, without judicial process, if this can be done without breach of the peace. If we ask, you promise to deliver the property at a time and place we choose. We will not be responsible for any other property not covered by this agreement that you leave inside the property or that is attached to the property. We will try to return that property to you or make it available to you to claim.

After we have possession of the property, we can sell it and apply the money to any amounts you owe us. We will give you notice of any public sale or the date after which a private sale will be held. Our expenses for taking possession of and selling the property will be deducted from the money received from the sale. Those costs may include the cost of storing the property, preparing it for sale and attorney's fees to the extent permitted under state law or awarded under the Bankruptcy Code. The rest of the sale money will be applied to what you owe under the Plan.

If you have agreed to pay the Advance, you will also have to pay any amount that remains unpaid after the sale money has been applied to the unpaid balance of the Advance and to what you owe under this agreement. You agree to pay interest on that amount at the same rate as the Advance, or, if applicable, at the default rate disclosed on the Addendum, until that amount has been paid.

**11. DELAY IN ENFORCING RIGHTS AND CHANGES IN THE PLAN --** We can delay enforcing any of our rights under this agreement any number of times without losing the ability to exercise our rights later. We can enforce this agreement against your heirs or legal representatives. If we change the terms of the Plan, you agree that this agreement will continue to protect us.

**12. CONTINUED EFFECTIVENESS --** If any part of this agreement is determined by a court to be unenforceable, the rest will remain in effect.

**13. NOTICE TO NORTH DAKOTA BORROWERS PURCHASING A MOTOR VEHICLE ---** THE MOTOR VEHICLE IN THIS TRANSACTION MAY BE SUBJECT TO REPOSSESSION. IF IT IS REPOSSESSED AND SOLD TO SOMEONE ELSE, AND ALL AMOUNTS DUE TO THE SECURED PARTY ARE NOT RECEIVED IN THAT SALE, YOU MAY HAVE TO PAY THE DIFFERENCE.
**14. NOTICE FOR ARIZONA OWNERS OF PROPERTY --** It is unlawful for you to fail to return a motor vehicle that is subject to a security interest, within thirty days after you have received notice of default. The notice will be mailed to the address you gave us. It is your responsibility to notify us if your address changes. The maximum penalty for unlawful failure to return a motor vehicle is one year in prison and/or a fine of $150,000.

**THE PROPERTY DESCRIPTION ON PAGE ONE IS PART OF THIS AGREEMENT. NOTICE: SIGN THIS AGREEMENT ON PAGE ONE.**

© CUNA MUTUAL GROUP, 1980, 82, 84, 86, 89, 98, 99, 2000, ALL RIGHTS RESERVED    VXX036 (LASER)

# CERTIFICATE OF TITLE OF A VEHICLE

**EXHIBIT F**

| VEHICLE IDENTIFICATION NO. | YEAR | MAKE | MODEL | BODY STYLE | NO. |
|---|---|---|---|---|---|
| 1FMFU16L14LA87168 | 2004 | FORD | EXPEDITN | UTILITY | X9064676113 |
| 1FMFU16L14LA87168 | | | | | |

| DATE ISSUED | ODOMETER | COM | PURCHASED | PURCHASE DATE |
|---|---|---|---|---|
| 03/05/09 | | | USED | 02/07/09 |

MOBILE HOME SQ. FT

TYPE OF TITLE
ORIGINAL

MAILING ADDRESS

CONSUMERS CREDIT UNION
1210 S LAKE ST
MUNDELEIN IL 60060-3706



LEGEND(S)

MILEAGE NOT REQUIRED

OWNER(S) NAME AND ADDRESS
DANA KOZARZOWSKI
10680 PAINTED DESCRT COURT
HUNTLEY IL 60142

FIRST LIENHOLDER NAME AND ADDRESS
CONSUMERS CREDIT UNION
1210 S LAKE ST
MUNDELEIN IL 60060-3706

SECOND LIENHOLDER NAME AND ADDRESS



**RELEASE OF LIEN**
The Lienholder on the vehicle described in this Certificate does hereby state that the lien is released and discharged.

| First (Name) | By | Signature of Authorized Agent | Date |
|---|---|---|---|
| Firm (Name) | By | Signature of Authorized Agent | Date |

**NEW LIEN ASSIGNMENT:** The information below must be on an application for title and presented to the Secretary of State.
Secured Party:                                             Address:

▶ Federal and State law requires that you state the mileage in connection with the transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment.

**ASSIGNMENT OF TITLE**
The undersigned hereby certifies that the vehicle described in this title has been transferred to the following printed name and address:

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked.

☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage.
WARNING-ODOMETER DISCREPANCY.

NO.
TENTHS

"If this vehicle is one of more than 5 commercial vehicles owned by me, I certify also that the vehicle is not damaged in excess of 33 1/3% of its fair-market value unless this document is accompanied by a salvage application."

ODOMETER READING
Signature(s) of Seller(s)

Printed Name(s) of Seller(s)
I am aware of the above odometer certification made by seller

DATE OF SALE

Signature(s) of Buyer(s)                                   Printed Name

I, Jesse White, Secretary of State of the State of Illinois, do hereby certify that according to the records on file with my Office, the person or entity named hereon is the owner of the vehicle described hereon, which is subject to the above named liens and encumbrances, if any. IN WITNESS WHEREOF, I HAVE AFFIXED MY SIGNATURE AND THE GREAT SEAL OF THE STATE OF ILLINOIS, AT SPRINGFIELD.

CONTROL NO. G8128351

*Jesse White*
JESSE WHITE, Secretary of State

**DO NOT ACCEPT TITLE SHOWING ANY ERASURES, ALTERATIONS OR MUTILATIONS.**

# EXHIBIT G



## CONSUMERS
### CREDIT UNION

*Your life. Our commitment.*
1210 S. Lake Street
P.O. Box 503
Mundelein, IL 60060-0503

December 15, 2011

TO WHOM IT MAY CONCERN:

THIS IS TO CERTIFY THAT CONSUMERS CREDIT UNION HAS NO RIGHT OR
INTEREST IN THE FOLLOWING DESCRIBED VEHICLE:

| | |
|---|---|
| *NAME* | **DANA KOZARZOWSKI** |
| *YEAR* | **2004** |
| *MAKE* | **FORD EXPEDITION** |
| *VIN* | **1FMFU16L14LA87168** |

BY:

_____
JENNIFER JOHNSON

THIS IS A LIEN RELEASE. USE THIS AT YOUR DEPARTMENT OF MOTOR
VEHICLES TO OBTAIN A LIEN FREE TITLE OR A DUPLICATE TITLE FOR
YOUR CAR.

Waukegan ■ Mundelein ■ North Waukegan ■ Gurnee ■ Round Lake Beach ■ Volo

**EXHIBIT H**

## NADA Used Car Guide
Wednesday, October 21, 2015

## Vehicle Clean Trade Value

Region: Midwest - October 2011          Reference #:

Vehicle Description: 2004 FORD TRUCK          VIN: 1FMFU16L14LA87168

Expedition-V8
Utility 4D XLT 4WD

| | |
|---|---|
| NADA CLEAN TRADE-IN * | $8,125 |
| Mileage Value(102,500 Miles) | $0 |

---- OPTIONAL EQUIPMENT ----

| | |
|---|---|
| NADA CLEAN TRADE-IN INCLUDING OPTIONS * | $8,125 |

NADA assumes no responsibility or liability for any errors or omissions
or any revisions or additions made by anyone on this report.
All NADA values are reprinted with permission of
NADA Used Car Guide, NADASC.